UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY ANDERSON,

       Plaintiff,

v.                                    Case No. 2:11-cv-460
                                           HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## OPINION

Jeffrey Anderson filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 on September 28, 2009. He claims he became disabled on May 15, 2009, due to chronic back and leg pain exacerbated by obesity. Plaintiff alleges he became disabled after a work-related accident on May 14, 2009, while lifting cases of soda into his truck. Plaintiff's claim for benefits was initially denied on April 19, 2010, and upon reconsideration on April 28, 2010. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 7, 2011. Testifying at the hearing were Plaintiff and Vocational Expert (VE) David Ostwald. On March 4, 2011, the ALJ issued a decision finding that Plaintiff was not disabled because he could perform the requirements of unskilled, sedentary work. *See* transcript of Administrative hearing at page 19 (hereinafter Tr. at ___). The ALJ stated:

> "[b]ased on the testimony of the vocational expert, . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."

*Id.* The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying his request for disability benefits.

In a social security case, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and therefore entitled to benefits. This Court's review of the Commissioner's decision is limited to whether the Commissioner applied the correct legal standard and whether the findings of the Commissioner are supported by substantial evidence. Substantial evidence is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). If substantial evidence supports the Commissioner's decision, this Court must defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). In this case, the Commissioner adopted the decision of the ALJ and it is that decision which is the subject of Plaintiff's claim in this Court.

An ALJ is required to follow the applicable social security regulations when making a disability determination. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004). If the ALJ fails to follow those regulations, this Court may remand the case to the Commissioner under two circumstances. First, a remand may be appropriate if a procedural error is made with respect to a regulation that is intended to confer rights on the claimant and, second, a remand may be appropriate where the failure to follow the required procedure prejudiced the claimant on the merits. *See Rabbers v. Commissioner of Social Security*, 582 F.3d 647 (6th Cir.

2009).  An ALJ's failure to follow procedural rules may be considered harmless error only when "concrete factual and medical evidence" is "apparent in the record" and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled.  *Rabbers*, 482 F.3d at 657-58 (error was harmless because the ALJ "would have reached the same conclusion").  This Court cannot affirm the ALJ's decision if it concludes that the decision "could have been" supported by the evidence because this would propel the Court into the fact finder, a role not envisioned by Congress.  *See Simpson v. Commissioner of Social Security*, No. 08-3651, 2009 WL 2628355 at *10 (6th Cir. Aug. 27, 2009).

Plaintiff alleges that he is unable to work because of limited mobility, severe pain, and numbness in his left leg.  Tr. at 76.  Plaintiff alleges an onset date of May 15, 2009, due to a work injury on May 14, 2009.  Tr. at 71.  Because of the soreness in his back, Plaintiff went to the emergency room on May 17, 2009.  Tr. at 225.  Plaintiff was seen by Dr. Erik Rubright, D.O., on June 3, 2009.  Tr. at 225-228.  Plaintiff was diagnosed with spondylolisthesis and Dr. Rubright suggested physical therapy and weight loss.  Tr. at 225-228.  Injections were added to his treatment plan by Dr. Ismail Alhamrawy on July 21, 2009.  Tr. at 425.  On August 28, 2009, Plaintiff went to the emergency room complaining of headaches.  Tr. at 395.  On the same day, Dr. Paul LaHaye diagnosed Plaintiff with degenerated disc disease, L5-S1, with spondylolisthesis, as well as morbid obesity.  Plaintiff was 5'10" tall and weighed 283 pounds and therefore had a body mass index (BMI) over 40.  Tr. at 231.  Plaintiff underwent a L5-S1 decompression with lumbar fusion surgery performed by Dr. LaHaye on September 4, 2009.  Beginning in December 2009, Plaintiff participated in physical therapy post surgery.  Tr. at 350.  Plaintiff complained that despite the surgery, his condition did not improve and he still suffered from back pain and leg numbness.  When Plaintiff had a follow-up visit with Dr. LaHaye on January 26, 2009, Plaintiff stated that he had quit

physical therapy because it made matters worse.  Tr. at 340.  Dr. LaHaye then referred Plaintiff to

Dr. Craig T. Coccia, M.D., for a second opinion because Dr. LaHaye did not want to recommend

another surgery.  Tr. at 325.  Dr. Coccia believed that Plaintiff's biggest discomfort was muscular

mechanical due to deconditioning.  Tr. at 321-322.

       When the ALJ asked Plaintiff about his weight, Plaintiff replied that he only ate one

meal a day, but had a very hard time exercising.  Tr. at 77.  Plaintiff stated he could walk six to eight

blocks during the summer, but could not continue once the weather changed.  Tr. at 77.  At the

hearing, the ALJ determined Plaintiff's BMI given his height, 5'10", and weight, at both 326 pounds

and 350 pounds.  Tr. at 78.  At 350 pounds, Plaintiff's BMI was 50.2 and at 326 pounds, his BMI

was 46.8, both of which classified Plaintiff as morbidly obese.

       During the 15 years prior to Plaintiff's injury, Plaintiff worked as a truck driver, a

yard supervisor at a lumberyard, a welder's helper, and a machine operator.  Tr. at 72.  The VE

classified this work as medium semiskilled (truck driving), heavy semiskilled (yard supervisor), and

heavy unskilled (welder's helper).  Plaintiff has not worked since the May 15, 2009, onset date.  Tr.

at 72.  Plaintiff was 44 years old at the time of the hearing.  Tr. at 70.  Plaintiff lives with his wife

and 10-year-old daughter and is dependent on welfare and unemployment.  Tr. at 75.  Plaintiff stated

his wife does all of the yard work, snow removal, laundry, dishes, cooking and household work.

Plaintiff claims that he cannot do any of these activities.  Tr. at 82.  Plaintiff also stated that he could

not participate in many activities with his daughter, such as the motion-activated Wii Video Game

System, because it is too painful.  Tr. at 84-85.

       The ALJ followed the five-step sequential evaluation process for determining whether

an individual is disabled (20 CFR 404.1520(a)).  The first step determines whether the claimant is

engaged in substantial gainful activity.  If he is, then he is not disabled.  At step two, it is determined

-4-

whether the claimant suffers from a medically determinable "severe" impairment, or a combination of impairments that is "severe." If he does not, then he is also not disabled. The third step determines whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). The claimant's impairment must also meet the duration requirement under 20 CFR 404.1509, which states "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 CFR 404.1509. Before step four, the ALJ must determine the claimant's residual functional capacity (RFC) under 20 CFR 404.1520(e). A RFC is "the most [a person] can still do despite [his or her] limitations." 20 CFR § 404.1545(a)(1). At step four, it is determined whether the claimant has the RFC to perform his past relevant work. If he does, the claimant is not disabled. Finally, at step five, the ALJ determines whether the claimant can do any other work considering the claimant's RFC, age, education, and work experience. If the claimant can do other work, he is not disabled. Tr. at 12-13.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's May 15, 2009, onset date (20 CFR 404.1571 *et seq*). Tr. at 13. The ALJ also found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with a history of fusion surgery and obesity (20 CFR 404.1520( c)). Tr. at 13. The ALJ found that Plaintiff was morbidly obese because his BMI was over 40 when calculated at both 326 pounds and 350 pounds (Plaintiff claimed to have gained weight at the time of the hearing). Tr. at 78. However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Tr. at 13. The ALJ stated that Plaintiff's treating physicians did not indicate that Plaintiff's conditions met the severity requirements of spine

impairments under Listing 1.04 or obesity disorders under Listing 1.00.  Tr. at 14. The ALJ

determined that Plaintiff had a RFC for sedentary work unskilled in nature, that allows for the use

of a cane when walking, requires no kneeling, squatting, or lifting from floor level of more than one

to two pounds on an occasional basis, and no continuous sitting in excess of an hour at a time with

a one or two-minute position change period.  Tr. at 14.  The ALJ next concluded that Plaintiff could

not perform any past relevant work under 20 CFR 404.1565.  Tr. at 17.  Finally, the ALJ found that

there were other jobs that exist in significant numbers in the national economy that Plaintiff could

perform.  Tr. at 18.  Therefore the ALJ concluded that Plaintiff was not disabled under the Social

Security Act.  Tr. at 19.

Plaintiff argues on appeal that the ALJ made the following errors in determining that

Plaintiff was not entitled to benefits:

1.    The ALJ did not give proper weight to the RFC which was approved
      by Plaintiff's treating physician.

2.    The ALJ did not properly consider the opinion of the VE.

3.    The ALJ had no substantial evidence to support his finding that 4,500
      jobs was a significant number.

4.    The ALJ assumed Plaintiff was not entitled to benefits because
      Plaintiff had not lost weight and had not obtained additional medical
      treatment.

There is substantial evidence that Plaintiff retains the capacity to perform a range of

sedentary work.  Plaintiff argues the ALJ committed error when he determined Plaintiff's RFC.  *See*

*Walker v. Secretary of HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992), stating "medical opinion of the

treating physician is to be given substantial deference–and, if that opinion is not contradicted,

complete deference must be given."  However, the *Walker* Court further concluded that "the ultimate

decision of disability rests with the administrative law judge."  *Walker*, 980 F.2d at 1070.  Here, the

-6-

ALJ's RFC determination actually coincides with Dr. Rubright's functional capacity evaluation, completed May 17, 2012.  Tr. at 461.  Dr. Rubright concluded that the Physical Demand Classification of Plaintiff was sedentary, with restrictions of 30 minutes of sitting, five minutes of standing, three minutes of walking with a cane, and no squatting or kneeling.  Tr. at 461.  The only difference between the ALJ's RFC and Dr. Rubright's report is that the ALJ stated that Plaintiff could not sit longer than one hour, while Dr. Rubright suggested only 30 minutes.  Tr. at 14, 461. The ALJ also considered the other medical reports of record in making his decision, such as Dr. Coccia's examination of Plaintiff (Tr. at 321) and Dana Beining's vocational assessment (Tr. at 491), as well as Plaintiff's ability to sit through the hearing (Tr. at 17).  Therefore, Plaintiff's argument that the ALJ's determination of Plaintiff's RFC did not follow Plaintiff's treating physician's recommendations is without merit.

        The substantial evidence requirement may be met when the ALJ relies upon testimony of a VE, but only when the VE's response to the ALJ's hypothetical question "'accurately portrays [plaintiff's] individual physical and mental impairments.'"  *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6 th Cir. 1987), citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  The VE testified that given Plaintiff's work history, Plaintiff had no work skills that would transfer to sedentary jobs.  Tr. at 90.  The ALJ then put forth two hypothetical questions to the VE when he testified at the hearing.  The first assumed a 44-year-old with a 12th grade education with Plaintiff's work background, restricted to unskilled sedentary work with the following restrictions:  no lifting from floor level, no kneeling or squatting, maximum continuous sitting of one hour with one or two-minute position changes, and the use of a cane when walking.  Tr. at 91.  To this the VE testified that there were no available jobs for such an individual because every job requires an ability to stoop or bend to pick something off the floor.  Tr. at 91.  The ALJ then

specified that he did not include limitations regarding bending or stooping and changed the hypothetical to unskilled sedentary with the following restrictions: lifting only occasionally from floor level at maximum one to two pounds, no kneeling or squatting, maximum continuous sitting of one hour with a one or two-minute period of position change, and a cane when walking. Tr. at 92-94. The VE testified that this individual could work as a charge account clerk (2,000 jobs available in the state of Michigan), food and beverage order clerk (1,500 jobs), call-out operator (1,000 jobs), or surveillance systems monitor (1,500 jobs). Tr. at 94. The VE's answer did not change if the hypothetical was altered to limit continuous sitting to a 30-minute maximum with one to two-minute position changes. Tr. at 95. However, if the hypothetical included the necessity to be in a recliner chair, two extra 15-minute breaks, or an absence from work one day a week, then the VE testified that he did not know of any jobs this individual could perform. Tr. at 95. Plaintiff argues that the ALJ should have relied upon the VE's answer to the first hypothetical question. In the second hypothetical, the ALJ changed the hypothetical to more accurately reflect Plaintiff's conditions (no lifting from floor level of more than one or two pounds on an occasional basis (Tr. at 14) revised to lifting from floor level on only an occasional basis at a maximum of one to two pounds (Tr. at 94)). The VE answered the second hypothetical with several types of sedentary jobs that Plaintiff could perform. Therefore, the ALJ did properly consider the opinion of the VE.

As a part of step five of the sequential process, the burden of evidence shifts to the Social Security Administration to "provide evidence about the existence of work in the national economy that [the claimant] can do, given [his or her] residual functional capacity, age, education, and work experience." 20 CFR 404.1512(g). Tr. at 13. The burden shifts to the Commissioner "to show that plaintiff possesses the capacity to perform other substantial gainful activity in the national economy." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6 th Cir. 1987).

This burden also includes that the Commissioner must provide evidence of a significant number of jobs that the claimant can perform in the national economy.  20 CFR 404.1560(c)(1)-(2).  Tr. at 13. Plaintiff argues that the ALJ's opinion that listed 4,500 jobs available for Plaintiff was not a significant number.  Plaintiff relies on *Hall v. Bowen*, where the Court was not willing to set a boundary between what is a significant number of jobs and what is an insignificant number, but rather, that this should be determined by the context of each case individually.  *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).  The *Hall* Court ultimately held that 1,350 jobs available in the local economy was equivalent to a significant number.  *Id.*  Here, the ALJ cited to 4,500 available jobs in his opinion (2,000 jobs as a charge account clerk, 1,500 jobs as an order clerk, and 1,000 jobs as a call out operator).  Tr. at 20.  The VE testified to 6,000 available jobs at the hearing (the jobs stated in the ALJ's opinion plus 1,500 jobs as a surveillance system monitor).  Tr. at 94.  The Sixth Circuit has held that a smaller number than 6,000, or even 4,500, jobs is a significant number, and therefore the ALJ did not err in finding that 4,500 jobs is a significant number of jobs available to Plaintiff. *See Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988).

Finally, Plaintiff argues that the ALJ erred by assuming Plaintiff should not receive benefits because Plaintiff had not lost weight nor obtained additional medical treatment.  Plaintiff relies on *Fraley v. Secretary of Health and Human Services*, 733 F.2d 437 (6th Cir. 1984), which reiterates 20 CFR § 404.1530 which states that to get benefits, the claimant must follow treatment prescribed by a physician only "if this treatment can restore your ability to work." *Id.* at 440. Plaintiff also argues that the Commissioner presumed his obesity was a remediable impairment, which was deemed "impermissible" by the Court in *Johnson v. Secretary of Health and Human Services. Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1113 (6th Cir. 1986). "Physicians' recommendations to lose weight do not necessarily constitute a prescribed course of

treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake treatment." *Id.*  There was no error made by the ALJ in assessing the credibility of Plaintiff's complaints of his condition because there is ample evidence in the record that Plaintiff is not disabled to the extent that he cannot perform unskilled sedentary work.  Plaintiff's daily activities include reading, playing on the computer, playing cards (Tr. at 14),  walking six to eight blocks in the summer time (Tr. at 77), walking around as much as he can in town with a cane (Tr. at 79), driving for short periods (Tr. at 79), and he is able to clean himself (Tr. at 83), and take care of his own finances (Tr. at 15).  Nowhere in the ALJ's opinion does it state that obesity is a remedial impairment, but rather, that there was "no evidence in the record of a genuine effort to lose weight" by Plaintiff.  Tr. at 17.  Also, the ALJ never stated in his opinion that Plaintiff was trying to avoid treatment, but that Plaintiff's practice of taking medication only two to three times a week did not support Plaintiff's assertion of severe pain.  Tr. at 17.

For the foregoing reasons, the Court finds there is substantial evidence to support the Commissioner's decision denying Plaintiff's claim for disability benefits.  Accordingly, the decision of the Commissioner will be affirmed.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 1, 2012